UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cause No. 1:18-CR-21-HAB |
| | ) | |
| BRANDON BUCHANAN | ) | |

**OPINION AND ORDER**

Defendant is back before the Court, once again requesting release from imprisonment due to the COVID-19 pandemic. Defendant's previous request was denied, with the Court finding that he presented no extraordinary or compelling reasons for release and that the § 3553(a) factors supported his continued incarceration. (ECF No. 108). Defendant's renewed motion (ECF No. 110) changes the medical basis for the requested relief but fares no better in the eyes of the Court in establishing the prerequisites for release. Just as before, his motion will be denied.

**A.     Factual Background**

This Court's prior order (ECF No. 108) adequately addressed the factual background of Defendant's case. The Court will not recreate that background here.

**B.     Legal Analysis**

Defendant's motion requests compassionate release. Generally, a court is statutorily prohibited from modifying a term of imprisonment once imposed. *See* 18 U.S.C. § 3582(c). A handful of statutory exceptions exist, however, one of which allows a court to grant an inmate compassionate release if the inmate meets certain requirements. *See* 18 U.S.C. § 3582(c)(1)(A). Under this provision, a court may not modify a term of imprisonment except that –

(1) in any case --

>    (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, . . . finds that—
>
>    (i) extraordinary and compelling reasons warrant such a reduction …
>
>    … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

Because Defendant, not the Director of the BOP, filed the motion, the Defendant must first demonstrate that he meets the statutory exhaustion. The parties agree that Defendant has done so, allowing the Court to proceed to the merits of the motion.

Where Defendant previously relied on his history of the common cold/flu, he now seeks relief based on his weight (he is characterized as obese by BMI standards[1]). He also relies on the conditions at FCI Elkton, where he is still being held.

Congress did not define "extraordinary and compelling reasons" in the statute, instead delegating the matter to the Sentencing Commission to promulgate a policy statement that "describe[s] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The policy statement, contained in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and the accompanying Application Notes, in line with the statutory directive in § 3582(c)(1)(A), requires a court to make several findings.

---

[1] Defendant represents that he is 67 inches tall and weighs 213 pounds according to a (arguably out-of-date) vital signs report. This equates to a BMI of 33.4. With numbers in excess of 30 qualifying as obese, Defendant is obese by BMI standards, if only just.

First, the court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). To this end, a court is to consider the medical condition of the defendant, his age, his family circumstances, and whether there exists in the defendant's case an extraordinary or compelling reason "other than or in combination with" the other reasons described in the Application Notes. Second, the Court must determine whether the Defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

Additionally, when the defendant moves for a reduction based on COVID-19, Courts have also considered: (1) the specificity of the defendant's COVID-19 concerns, (2) whether the defendant has a medical condition that makes him especially susceptible to the dangers of COVID-19, and (3) the extent that the defendant's release would mitigate or aggravate the COVID-19 pandemic. *See United States v. Barrett*, No. 2:17-CR-1, 2020 WL 3264112, at *3 (N.D. Ind. June 17, 2020); *see also United States v. Davis*, No. 2:19-CR-74-3, 2020 WL 1951652, at *1–2 (N.D. Ind. Apr. 23, 2020) (applying similar factors to consider whether there was a "compelling reason" for pretrial release due to the COVID-19 pandemic). In the context of the COVID-19 pandemic, "§ 3582(c)(1)(A) contemplates a sentence reduction for specific individuals based on the individuals' particular circumstances of where he is housed and his personal health conditions." *See United States v. Melgarejo*, No. 12-cr-20050, 2020 WL 2395982, at *3 (C.D.Ill. May 12, 2020). !

In this case, Defendant's filings give this Court very few reasons, let alone extraordinary or compelling ones, to justify granting his motion. Defendant has not articulated any medical

condition that makes him more susceptible to the virus nor has he provided any basis for the Court to conclude that he suffers from a serious condition that increases the likelihood of severe consequences from COVID-19. Additionally, Defendant is in his early 30s and, therefore, is not in an age category that would put him at increased risk for complications.

With respect to Defendant's obesity, obesity is a factor that puts an individual at an increased risk for severe illness from COVID-19. *See* CDC, People Who Are at Increased Risk for Severe Illness, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html. However, Defendant's BMI alone provides little insight into his physical condition. BMI is a notoriously blunt tool with "clinical limitations," including its inability to differentiate between excess fat, muscle, and bone mass. *See* CDC, Body Mass Index: Considerations for Practitioners, https://www.cdc.gov/obesity/downloads/bmiforpactitioners.pdf. Defendant has identified no current medical issues resulting from his obesity, indicating to the Court that it has little adverse effect on his overall health.

As for his confinement, the Court has previously addressed the issues at FCI Elkton. (ECF No. 108 at 1). However, conditions there have improved considerably. Where there were 360 infections at the time of Defendant's initial filing, the number is now 99% lower: only three inmates currently test positive. https://www.bop.gov/coronavirus/. Even if the numbers were still at their peak, "the mere presence of COVID-19 in a particular prison cannot justify compassionate release—if it could, every inmate in that prison could obtain release." *See Melgarejo*, 2020 WL 2395982, at *3. Rather, "a prisoner [may] satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *Id.* at 5–6. *See also*

*United States v. Raia,* 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release.").

The Bureau of Prisons continues to take serious and substantial steps to reduce the spread of COVID-19 within its facilities. *See* Federal Bureau of Prisons, COVID-19 Action Plan: Phase Seven (posted on May 20, 2020), https://www.bop.gov/resources/news/20200520_covid-19_phase_seven.jsp (last visited June 11, 2020); *see also*, BOP COVID-19 Modified Operations Plan, https://www.bop.gov/coronavirus/covid19_status.jsp. Those efforts have made a significant difference. Where the mere utterance of "FCI Elkton" once raised the very real possibility of compassionate release, the facility is now likely safer than your average restaurant.

Finally, with respect to the §3553(a) factors, they have not changed. The Court observes that Defendant has served just over two years of his 117-month sentence. This sentence was imposed to reflect the seriousness of the offense, promote respect for the law as well as to afford adequate deterrence and to protect the public from further crimes of the defendant. Buchanan does not identify a single educational or rehabilitative program that he has completed, and he has been disciplined at least once during his incarceration. (ECF No. 103 at 4). Defendant's hyperbole regarding his "de facto death sentence" notwithstanding, the Court finds that the significant sentence reduction that Buchanan seeks would greatly undermine the above statutory purposes of sentencing.

In sum, because this Court (again) does not find extraordinary and compelling circumstances exist for Buchanan's release and (again) finds that a reduction of sentence is inconsistent with the § 3553(a) factors, Buchanan does not meet the criteria for compassionate release and his motion (ECF No. 110) is DENIED.

SO ORDERED on November 24, 2020.

                                          s/ *Holly A. Brady*
                                          JUDGE HOLLY A. BRADY
                                          UNITED STATES DISTRICT COURT